UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

O'DOLL VAN WILLIAMS, JR.,
MARCUS ROBINSON, GWENDOLYN
ROBINSON, BRANDI WHITFIELD,
KIMBERLY SAUNDERS, and
JOHNNIE HALL,

          Plaintiffs,

v.                                    Case No. 8:20-cv-2611-T-33JSS

VOYA FINANCIAL ADVISORS, INC.,

          Defendant.
_____/

**ORDER**

     This matter comes before the Court upon consideration of

Defendant Voya Financial Advisors, Inc.'s Motion to Compel

Arbitration and Stay This Action (Doc. # 5), filed on November

13, 2020. Plaintiffs O'Doll Van Williams, Jr., Marcus

Robinson, Gwendolyn Robinson, Brandi Whitfield, Kimberly

Saunders, and Johnnie Hall responded on November 30, 2020.

(Doc. # 17). For the reasons below, the Motion is granted.

**I.   Background**

     Plaintiffs are African American individuals who worked

in some capacity for Voya Financial, a broker-dealer "that

provides retirement, investing, and financial planning

services." (Doc. # 1-4 at ¶¶ 3-8, 11). As part of their

working relationship with Voya Financial, Plaintiffs signed

1

three different written agreements. (Doc. # 5 at 7-9).
Plaintiffs Williams, Whitfield, and Marcus Robinson signed a
"Retail Agent Agreement," which includes the following
arbitration clause:

> 9. **Arbitration.** Agent and Company shall settle by
> binding arbitration any dispute, claim, or
> controversy, including, without limitation, any
> claim alleged under any state or federal statute,
> (i) that Agent and Company are required or
> permitted to arbitrate under the rules,
> constitutions or by-laws of the NASD, as may be
> amended from time to time ("NASD Arbitration"), or
> (ii) that arises out of or is related in any way to
> this Agreement, the breach, termination, or
> validity of this Agreement, or the actions of Agent
> or Company with respect to one another during the
> term of this Agreement. Arbitration of any dispute,
> claim, or controversy that is not subject to NASD
> Arbitration shall be administered by the American
> Arbitration Association under its Commercial
> Arbitration Rules. Judgment on any arbitration
> award may be entered by any court having
> jurisdiction thereof. Agent and Company consent to
> arbitration in Hartford, Connecticut. Arbitration
> under this Agreement shall be governed by the
> Federal Arbitration Act.[1]

(Doc. # 5-3 at 5-6; Doc. # 5-7 at 5-6; Doc. # 5-14 at 5-6)

(emphasis in original). In addition to the Retail Agent

---

1. Plaintiff Marcus Robinson's agreement contains slightly
different language, replacing "NASD Arbitration" with "FINRA
Arbitration," and stating that the parties agreed to
arbitration in Windsor, Connecticut, rather than Hartford,
Connecticut. (Doc. # 5-7 at 5-6). The National Association of
Securities Dealers ("NASD") is the Financial Industry
Regulatory Authority, Inc's ("FINRA") predecessor. Deutsche
Bank Sec. Inc. v. Simon, No. 19-20053-CIV-GAYLES/MCALILEY,
2019 WL 4864465, at *2 (S.D. Fla. Aug. 20, 2019).

Agreement, Williams signed an "Advisory Representative Agreement," which includes a lengthy agreement to arbitrate:

> **20. *Binding Arbitration.*** It is understood that the following **AGREEMENT TO ARBITRATE** does not constitute a waiver of the right to seek a judicial forum to the extent that such waiver would be void under applicable law.
>
> > **a. The parties each agree that, except as inconsistent with the preceding sentence, all claims or controversies, and any related issues, which may arise at any time between the parties (including their directors, officers, employees, representatives, or agents) with respect to any subject matter; any transaction, order, or direction; any conduct of the parties or their directors, of employees, representatives, or agents; any construction, performance, or breach of this or any other agreement between the parties, whether entered into prior to, on, or subsequent to the date hereof; any breach of any common law or statutory duty; or any violation of any federal or state law of any nature <u>shall be resolved by binding arbitration rather than by lawsuit in a court of law or equity</u>.**
> >
> > b. Any arbitration pursuant to this agreement shall be in accordance with, and governed by, a mutually agreeable arbitration forum, but, in the absence of such agreement, then the Code of Arbitration Procedure of the NASD, if the NASD accepts jurisdiction, and, if not, then the American Arbitration Association. There shall be at least three arbitrators unless otherwise agreed by the parties. The award of the arbitrators, or of the majority of them, shall be final and binding upon the parties, and judgment upon the award rendered may be entered in any federal or state court having jurisdiction. Any arbitration shall be commenced by delivery to the other party of a

> written demand for arbitration setting forth
> in detail the claim or controversy to be
> arbitrated.
>
> c. The arbitrators shall be entitled to order
> specific performance of the obligations
> imposed by this Agreement.

(Doc. # 5-4 at 8) (emphases in original). Lastly, Plaintiffs

Saunders, Hall, and Gwendolyn Robinson signed a "Registered

Representative Agreement," which includes a shorter

arbitration provision:

> **i. Arbitration.** Any controversy or claim between
> the parties will be settled by arbitration in
> accordance with the rules of the Financial Industry
> Regulatory Authority, and judgment upon the award
> may be entered in any court having jurisdiction.
> The arbitrators may award reasonable expenses,
> attorneys' fees and costs.

(Doc. # 5-11 at 7; Doc. # 5-18 at 7; Doc. # 5-21 at 6)

(emphasis in original).

Plaintiffs allege that Voya Financial discriminated

against them on the basis of race in a variety of ways. (Doc.

# 1-4 at ¶ 18-19). Plaintiffs initiated this action in state

court on September 22, 2020. (Doc. # 1-4). Thereafter, on

November 6, 2020, Voya Financial removed the action to this

Court on the basis of federal question jurisdiction. (Doc. #

1). The complaint includes claims against Voya Financial for

racial discrimination (Counts I, III, V, VII, IX, XI) and

retaliation (Counts II, IV, VI, VIII, X). (Doc. # 1-4).

On November 13, 2020, Voya Financial moved the Court to compel arbitration and stay the case pending completion of the arbitration. (Doc. # 5). Plaintiffs have responded (Doc. # 17), and the Motion is now ripe for review.

## II.   **Legal Standard**

Under the Federal Arbitration Act (FAA), a written arbitration provision in a "contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable," unless law or equity necessitates revocation of the contract. 9 U.S.C. § 2. Federal law favors arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. However, "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).

Before deciding whether a case should be referred to arbitration, "a court must determine: (1) whether there is a valid agreement to arbitrate; (2) whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate; and (3) whether the dispute does fall within the scope – the question of arbitrability."

Convergen Energy LLC v. Brooks, No. 20-cv-3746 (LJL), 2020 WL 5549039, at *13 (S.D.N.Y. Sept. 16, 2020) (citation omitted). "The question whether the parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (citation omitted).

A motion to compel arbitration is treated as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." Babcock v. Neutron Holdings, Inc., 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020) (citations omitted). Accordingly, "the Court may consider matters outside the four corners of the Complaint." Id. When determining the existence of an arbitration agreement, federal courts employ a "summary judgment-like standard," "conclud[ing] as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.'" Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" Id. (quoting Baloco v.

Drummond Co., 767 F.3d 1229, 1246 (11th Cir. 2014)).

## III. __Analysis__

Voya Financial moves the Court to compel FINRA arbitration and stay the case pending such arbitration because Plaintiffs' "claims fall squarely within the broad scope of the parties' arbitration agreements." (Doc. # 5 at 1-2). Plaintiffs respond that because FINRA's Code of Arbitration Procedures does not require employment discrimination claims to be arbitrated unless the parties agreed to arbitrate such claims, they cannot be compelled to arbitrate the instant suit. (Doc. # 17 at 5).

### A. __Initial Question of Arbitrability__

Generally, it is for the Court to determine the scope of an arbitration agreement. Betkowski v. Kelley Foods of Ala., 697 F. Supp. 2d 1296, 1298 (M.D. Ala. Mar. 23, 2010). However, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019). Still, "there must be 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide such issues." Blanton v. Domino's Pizza Franchising LLC, 962 F.3d 842, 844 (6th Cir. 2020).

Here, none of the arbitration agreements expressly state

7

that the initial question of arbitrability must be submitted to arbitration. (Doc. ## 5-3; 5-4; 5-7; 5-11; 5-14; 5-18; 5-21). Although the agreements do incorporate either the NASD or FINRA rules, "incorporating the FINRA rules into an arbitration agreement is insufficient on its own to evidence the parties' clear intent for the arbitral panel to determine arbitrability." [2] Retina Consultants P.C. Defined Benefit Pension Plan v. Benjamin, No. CV-119-037, 2020 WL 1491756, at *5 (S.D. Ga. Mar. 19, 2020); see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen, 62 F.3d 381, 384 (11th Cir. 1995) ("We conclude that, at most, section 35 [of the NASD Code] creates an ambiguity as to who determines arbitrability. Because an ambiguity is insufficient to override the

---

2. Although expressly incorporating the American Arbitration Association's ("AAA") Rules into an arbitration clause does constitute clear and unmistakable evidence that the parties delegated the initial question of arbitrability to an arbitrator, the contracts signed by Williams, Whitfield, and Marcus Robinson refer cases to the AAA only to the extent that the disputes cannot be arbitrated before FINRA. (Doc. # 5 at 6-9); see JPay, Inc. v. Houston, 904 F.3d 923, 937 (11th Cir. 2018). Indeed, the parties preferred forum is FINRA, and none of the other clauses refer to the AAA. (Doc. # 5 at 6-9). Considering that the AAA's rules would not apply if the parties were able to arbitrate before their chosen forum (FINRA), as well as the fact that the parties appear to agree that the initial question of arbitrability can be decided by this Court, and the presumption that courts decide such questions, the Court finds that this inclusion creates enough ambiguity so that the initial question of arbitrability need not be submitted to arbitration. (Doc. ## 5; 17).

presumption that courts determine arbitrability, . . . we conclude that the district court must determine whether the dispute between [the parties] is arbitrable."). Therefore, the Count finds that it can decide the issue of arbitrability.

### B. __Application of the Arbitration Agreements__

The Court now turns to the substance of the Motion. Plaintiffs challenge the validity of the agreements on the ground that this suit involves a claim of employment discrimination, which is carved out from FINRA's rule on mandatory arbitrations. (Doc. # 17 at 5). Plaintiffs argue that this carveout, and the fact that the broad agreements do not expressly include employment discrimination claims, evidences an intent not to arbitrate such claims. (Id.). Additionally, Plaintiffs posit that these agreements represent invalid contracts of adhesion. (Id.).

As noted, under the FAA, arbitration agreements are "valid, irrevocable, and enforceable," unless grounds exist to revoke said contract. 9 U.S.C. § 2. This represents a "federal policy favoring arbitration." Moses, 460 U.S. at 24. "When faced with a broadly worded arbitration clause, [courts] should follow the presumption of arbitration and resolve doubts in favor of arbitration." Cheruvoth v. SeaDream Yacht Club, Inc., No. 1:19-cv-24416-GAYLES/OTAZO-

9

REYES, 2020 WL 6263013, at *5 (S.D. Fla. Oct. 22, 2020) (citation omitted). "Accordingly, the FAA requires a court . . . to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of the agreement." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008) (citing Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1061 (11th Cir. 1998)).

## 1. **Enforceability of the Agreements**

Although state law governs the enforceability of an arbitration agreement, "the Supreme Court has also made clear that in enacting [Section 2] of the FAA, 'Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'" Morales v. Rent-A-Center, Inc., 306 F. Supp. 2d 175, 180 (D. Conn. 2003) (quoting Southland Corp. v. Keating, 465 U.S. 1, 7 (1984)). Therefore, "the FAA preempts all state laws that impermissibly burden arbitration agreements or limit the provisions of the FAA favoring arbitration agreements." Id. at 181. Only "generally applicable contract defenses, such as fraud, duress, or

unconscionability may be applied to invalidate arbitration agreements without contravening [Section 2 of the FAA]." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

Here, the parties agree that the "Retail Agent Agreements," signed by Williams, Whitfield, and Marcus Robinson, as well as the "Advisory Representative Agreement," signed by Williams alone, are governed by Connecticut law, and the "Registered Representative Agreements," signed by Saunders, Hall, and Gwendolyn Robinson, are governed by Iowa law.[3] (Doc. # 5 at 15; Doc. # 17 at 4). Therefore, the Court turns to Connecticut and Iowa law in determining whether the arbitration clauses are enforceable.

Under Connecticut law, "[t]he issue of whether the parties to a contract have agreed to arbitration is controlled by their intention." Connecticut v. Philip Morris, Inc., 905

---

3. The "Retail Agent Agreements" do not include a choice-of-law clause, but were signed in Connecticut. (Doc. ## 5-3; 5-7; 5-14); see Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp., No. 5:05-cv-260-Oc-GRJ, 2007 WL 1114045, at *2 (M.D. Fla. Apr. 12, 2007) ("Florida follows the principle of *lex loci contractus*, which means that the law of the place where the contract was signed governs the dispute."). The "Advisory Representative Agreement" includes a choice-of-law clause that selects Connecticut law. (Doc. # 5-4 at 9). The "Registered Representative Agreements" include a conflict-of-law clause, which provides: "This Agreement is governed under the law of the state of Iowa without regard to its conflicts of laws provisions." (Doc. # 5-11 at 7; Doc. # 5-18 at 7; Doc. # 5-21 at 6).

A.2d 42, 48 (Conn. 2006) (citation omitted). The parties'
intent is evidenced from the language used, interpreted in
light of the parties' situation and circumstances. Goldberg
v. Hartford Fire Ins. Co., 849 A.2d 368, 373 (2004). "Although
the intention of the parties typically is a question of fact,
if their intention is set forth clearly and unambiguously, it
is a question of law." Philip Morris, 905 A.2d at 48.

"Under Iowa law, the elements of a valid contract are
offer, acceptance, and consideration." Owen v. MBPXL Corp.,
173 F. Supp. 2d 905, 914 (N.D. Iowa 2001). "An acceptance of
an offer is a manifestation of assent to the terms thereof
made by the offeree in a manner invited or required by the
offer." Heartland Express, Inc. v. Terry, 631 N.W.2d 260, 270
(Iowa 2001) (citation omitted). "The offeree 'must know of
the offer before there can be mutual assent.'" Duncan v. Int'l
Mkts. Live, Inc., No. 4:20-cv-00017-RGE-HCA, 2020 WL 6733636,
at *4 (S.D. Iowa Nov. 6, 2020) (quoting Anderson v. Douglas
& Lomason Co., 540 N.W.2d 277, 283 (Iowa 1995)).

Here, the agreements are valid under both Connecticut
and Iowa law. The contracts at issue all include a provision
requiring arbitration of related disputes. (Doc. # 5 at 7-
9). Plaintiffs signed those agreements, "which serves as
presumptive evidence that an agreement was formed." Morales,

12

306 F. Supp. 2d at 181; see also Ziskovsky v. Ziskovsky, 843 N.W.2d 478, 478 (Ct. App. Iowa 2014) ("It is well-settled contract law that if a party to a contract is able to read the contract, and is given an opportunity to do so, that party cannot later argue she did not read the contract and remove herself from the terms of the contact.). And, Plaintiffs do not contend that they did not intend to arbitrate at least some claims or that there was no offer or acceptance.[4] (Doc. # 17); see also Ziskovsky, 843 N.W.2d at 478 (finding offer and acceptance where the parties had an opportunity to read their contracts, signed them, and did not contest those signatures). Neither do Plaintiffs contend that they entered into these agreements out of fraud or duress. (Doc. # 17).

Although Plaintiffs argue that the arbitration clauses are unenforceable because they are "contracts of adhesion," they provide no factual support thereof and this statement therefore amounts to no more than a legal conclusion. (Id. at 8); DaimlerChrysler Ins. Co. v. Pambianchi, 762 F. Supp. 2d 410, 423 (D. Conn. 2011) ("Under Connecticut law, a court

---

4. The Court need not address whether adequate consideration was exchanged because Plaintiffs did not raise a lack of consideration argument. See Owen, 173 F. Supp. 2d at 914 ("The Iowa Supreme Court refuses to address the issue [of lack of consideration] unless raised by the parties.").

cannot find procedural unconscionability unless the party opposing enforcement of a contractual provision has introduced some *specific* evidence of overreaching by the other party in the formation of the agreement." (emphasis in original)); De Dios v. Brand Energy & Infrastructure Servs., No. C-18-4011-MWB, 2018 WL 2976104, at *8 (N.D. Iowa June 13, 2018) ("Under Iowa law, the burden of proof that a particular provision or contract is unconscionable rests on the party claiming it is unconscionable.").

To the extent that Plaintiffs attempt to raise an unconscionability defense without stating so plainly, "mere inequality of bargaining power that exists between an employee and employer is an insufficient reason to find an arbitration agreement unenforceable." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991); see also De Dios, 2018 WL 2976104, at *8 ("As Brand points out, De Dios sought employment with Brand, but there is no reason to believe that he could not have also sought employment elsewhere, or that he could only have worked for Brand. . . . Here, De Dios not only signed the Agreement to Arbitrate in his employment application, but the Acknowledgement, expressly representing that he had read and understood the Agreement to Arbitrate and had been given time to consider

it. Because he does not allege any fraud, he cannot contradict these representations."); <u>Billie v. Coverall N. Am.</u>, 444 F. Supp. 3d 332, 347 (D. Conn. 2020) ("[U]nder Connecticut law, the court cannot deem the delegation clause to be unconscionable based solely on the adhesive nature of the contract and the unequal standing of the [parties]." (citation omitted)).

The Court also notes that in all of the relatively short contracts, the arbitration clauses were visible, with – at a minimum – the header noting "arbitration" in bold. (Doc. # 5 at 6-7); <u>see</u> <u>Billie</u>, 444 F. Supp. 3d at 347 ("In both contracts, the section heading is written in bold, capital letters. The text of the clause is written in the same font size as the surrounding clauses. The law requires nothing more."). With all of this in mind, as well as the strong federal policy favoring arbitration, the agreements to arbitrate are enforceable.

### 2. <u>Scope of the Agreements</u>

Now that the Court has found that enforceable arbitration agreements exist, it must determine whether the instant racial discrimination claims are included in the scope of those agreements. In gleaning the scope of the agreements, the Court looks to both the FAA and the

agreements' text. Because "the FAA creates a presumption in favor of arbitrability," the parties "must clearly express their intent to exclude categories of claims from their arbitration agreement." Lambert, 544 F.3d at 1197-98. "Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration." Paladino, 134 F.3d at 1062 (citing Gilmer, 500 U.S. at 28). Additionally, "[a] party cannot avoid arbitration . . . because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim[.]" Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1221 (11th Cir. 2000).

Here, the arbitration agreements express the parties' intent to arbitrate any and all controversies or claims arising from their relationship – including racial discrimination claims. (Doc. # 5 at 6-9). Indeed, these provisions are both broad and do not specifically exclude discrimination claims. (Id.); see Maddox v. USA Healthcare-Adams, LLC, 350 F. Supp. 2d 968, 974 (M.D. Ala. 2004) ("The FAA creates a presumption in favor of arbitration so parties must clearly express their intent to exclude categories of claims from their arbitration agreement. Adams has explicitly

16

excluded certain categories from arbitration. However, discrimination claims do not fall within the purview of noted exceptions. . . . Maddox should be compelled to arbitrate [the age and disability discrimination] claims that he has presented to this court." (citations omitted)).

The Eleventh Circuit faced a similar issue in <u>Brown v. ITT Consumer Financial Corp.</u>, in which three African American employees sued their employer for racially discriminatory treatment. <u>Brown</u>, 211 F.3d at 1217-21. The employees had signed an arbitration agreement which provided that the parties "agreed that any dispute between them or claim by either against the other or any agent or affiliate of the other shall be resolved by binding arbitration[.]" <u>Id.</u> at 1220-21. The Court found that this was sufficient to compel arbitration of the discrimination case, despite the fact that the arbitration clause did not specifically include such claims. <u>Id.</u> at 1221-22 ("We think that the language of the instant arbitration clause . . . includes statutory claims."). Here, like in <u>Brown</u>, the broad arbitration clause compels the arbitration of racial employment discrimination claims. <u>Id.</u>; see <u>Bender v. A.G Edwards & Sons, Inc.</u>, 971 F.2d 698, 700-01 (11th Cir. 1992) (finding that Title VII claims were subject to arbitration under similar circumstances); see

17

also <u>Maddox</u>, 350 F. Supp. 2d at 972 ("The FAA applies to all employment contracts not specifically exempted from the FAA (transportation workers), including statutory claims for discrimination.").

And, although Plaintiffs contend that Rule 13201 of FINRA's Code of Arbitration Procedure precludes compelling arbitration of racial discrimination claims here, the Court does not find this logic persuasive. (Doc. # 17 at 5). Rule 13201 provides that employment discrimination claims are "not required to be arbitrated" under FINRA's Code, and rather that such claims "may be arbitrated only if the parties have agreed to arbitrate [them]." FINRA Rule 13201(a). Because the Court has already found that the broad arbitration clauses include an agreement to arbitrate racial discrimination claims, Rule 13201 – even if it applies here – is satisfied.

Additionally, a number of courts in the Eleventh Circuit have previously found that parties can be compelled to arbitrate racial discrimination claims pursuant to a valid arbitration agreement. <u>See</u>, <u>e.g.</u>, <u>Lewis v. Haskell Co.</u>, 108 F. Supp. 2d 1288, 1290-91, 1294 (M.D. Ala. 2000) (directing African American plaintiffs to arbitrate their racial discrimination claims in light of a broad arbitration clause that did not specifically include such claims); <u>Ravelo v.</u>

Shutts & Bowen, LLP, No. 8:09-cv-865-T-26EAJ, 2009 WL 1587272, at *1-2 (M.D. Fla. June 5, 2009) (compelling arbitration in a case involving racial discrimination and retaliation claims where the arbitration clause provided that the plaintiff agreed to "resolve all claims, controversies or disputes which may arise out of his/her employment with the Firm (including statutory claims) by submitting these claims to final and binding arbitration"); James v. Cmty. Phone Book, Inc., No. 3:07-cv-775-J-33TEM, 2008 WL 2741841, at *5 (M.D. Fla. July 11, 2008) (compelling arbitration of a pro se plaintiff's racial discrimination claims).

Therefore, the Motion is granted, and this case is stayed pending arbitration of Plaintiffs' claims. See Milestone v. Citrus Specialty Grp., Inc., No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) ("In accord with Eleventh Circuit law, this case must be stayed rather than dismissed." (citing 9 U.S.C. § 3)).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Voya Financial Advisors, Inc.'s Motion to Compel Arbitration and Stay this Action (Doc. # 5) is **GRANTED.**

(2) This case is referred to FINRA arbitration and is **STAYED**

19

pending resolution thereof. The Clerk is directed to **STAY** and administratively **CLOSE** the case.

(3) The parties are **DIRECTED** to file a joint report of the status of the arbitration proceeding by March 8, 2021, and every ninety days thereafter. The parties must immediately notify the Court upon the arbitrator's resolution of the claims asserted in this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 6th day of January, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE